IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**ROBIN DANIELSON BROOKS**,

                  Plaintiff                Civ. No. 3:10-CV-01002-MO

                     v.                       **OPINION AND ORDER**

**MICHAEL J. ASTRUE**,
Commissioner of Social Security,

                  Defendant.

**MOSMAN, J.,**

      Plaintiff Robin Brooks ("Brooks") challenges the Commissioner's decision finding her not disabled and denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). I have jurisdiction under 42 U.S.C. § 405(g). For the following reasons, the Commissioner's decision is reversed and remanded for further proceedings.

      I review the Commissioner's decision to ensure the Commissioner applied proper legal standards and that his findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009).

## BACKGROUND

Born in 1961, Ms. Brooks alleges disability since December 28, 2005 (Admin. R. 354),[1] due to bipolar disorder. AR 358. The Commissioner denied her applications initially and upon reconsideration (AR 133-41), and an ALJ held hearings on February 18, 2009, and July 28, 2009. AR 32-129. On September 30, 2009, the ALJ found Ms. Brooks not disabled. AR 20-31. The Appeals Council denied review of the matter on July 13, 2010. AR 1. Ms. Brooks now appeals.

## THE ALJ'S FINDINGS

The ALJ first found that Ms. Brooks met insured status requirements pertaining to her DIB application through December 31, 2010. AR 22. The ALJ followed the Commissioner's five-step sequential disability analysis directed by 20 C.F.R. §§ 404.1520; 416.920.

At step one in the sequential proceedings, the ALJ found that Ms. Brooks engaged in substantial gainful activity during part of the period after her December 28, 2005, alleged onset date. AR 22. At step two, the ALJ found Ms. Brooks' bipolar affective disorder and substance abuse disorder "severe." AR 23. The ALJ found that these impairments did not meet a "listed" disorder, *id.*, and found that Ms. Brooks retains the residual functional capacity to "perform a full range of light work at all exertional levels." AR 24. The ALJ additionally found that Ms. Brooks "has nonexertional limitations in that she is able to do work involving simple tasks and occasional contact with the public." *Id.* The ALJ found Ms. Brooks unable to perform her past relevant work at step four in the sequential analysis, but subsequently found that Ms. Brooks could perform work in the

---

[1] Citations to the Administrative Record ("AR") refer to the indicated pages in the official transcript of the Administrative Record, filed with the Commissioner's Answer on March 1, 2011. Docket # 11.

national economy, and, therefore, found Ms. Brooks not disabled. Tr. 29-30.

## ANALYSIS

Ms. Brooks asserts that the ALJ erroneously evaluated (1) her testimony; (2) the opinion of Yoonhui Chloe, Psychiatric Mental Health Nurse Practitioner ("PMHNP"); and (3) the opinion of Dana Fox, Licensed Professional Counselor ("LPC"). Ms. Brooks subsequently asserts that this evidence establishes disability under the Commissioner's regulations.

**I.     Credibility**

Ms. Brooks argues that the ALJ's credibility determination should be reversed. The ALJ found Ms. Brooks' statements concerning her symptoms "not credible to the extent they are inconsistent with the above residual functional capacity assessment." AR 26. The ALJ subsequently discussed Ms. Brooks' medical treatment records, work activity, failure to follow prescribed treatment, and activities of daily living. AR 26-29. Ms. Brooks challenges the ALJ's findings regarding her failure to follow treatment, work history, and activities of daily living. Pl.'s Opening Br. 21-23.

**A.     Credibility Standards**

The ALJ must consider all symptoms and pain which "can be reasonably accepted as consistent with the objective medical evidence, and other evidence." 20 C.F.R. §§ 404.1529(a); 416.929(a). Once a claimant shows an underlying impairment which may "reasonably be expected to produce pain or other symptoms alleged," absent a finding of malingering, the ALJ must provide "clear and convincing" reasons for finding a claimant not credible. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (citing *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)).

The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court

to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991)(*en banc*)). The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F.3d at 1284. The ALJ may additionally employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements regarding symptoms by the claimant. *Id.* The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006); *see also Bunnell*, 947 F.2d at 346-47.

    **B.**    **Analysis**

        **1.**    **RFC Assessment and Credibility**

The ALJ may not reject a claimant's credibility based upon the conclusions reached in her RFC assessment. Such analysis reverses the manner in which an ALJ considers a claimant's credibility. The ALJ must consider a claimant's symptom testimony in construing the claimant's RFC assessment. 20 C.F.R. §§ 404.15345(a)(3); 416.945(a)(3); SSR 96-8p at *7 (available at 1996 WL 374184). Dismissing a claimant's credibility because it is inconsistent with a conclusion that must itself address the claimant's credibility is improper circular reasoning. *Carlson v. Astrue*, 682 F. Supp.2d 1156, 1167 (D. Or. 2010); see also *Lowe v. Astrue*, No. 10-0904, slip op. at 3 (D. Or. Sep. 15, 2011). The ALJ's reliance upon her own RFC assessment in finding Ms. Brooks not credible is not sustained.

///

### 2. Failure to Follow Treatment

The ALJ found that Ms. Brooks did not follow recommended treatment, noting that she refused medications due to potential weight gain as a side effect (AR 26), and at other times "chose not to follow the prescriber's orders," and, subsequently would have manic and depressive episodes. AR 27.

The ALJ may cite a claimant's failure to follow treatment in his credibility analysis. *Smolen*, 80 F.3d at 1284; *Fair v. Bowen*, 885 F.2d 597, 603-04 (9th Cir. 1989). Acceptable reasons for failing to follow treatment include treatment proscribed by one's religion, or treatment that, because of its magnitude, is "very risky." 20 C.F.R. §§ 404.1530; 416.930. Apprehension regarding weight gain is not an acceptable reason for failing to follow treatment. The ALJ's findings on this point are therefore affirmed.

However, the Ninth Circuit also instructs that it is "questionable practice" to chastise a mentally ill patient for exercising poor judgment in failing to comply with treatment. *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996). The ALJ presently inferred that Ms. Brooks willfully chose not to take prescribed medication, and would subsequently have manic and depressive episodes. AR 27. The record shows that upon her discharge from Luke-Dorf treatment center, a therapist noted that, "The client has experienced periods of instability. When the client chooses not to follow her prescriber's orders she would experience manic and depressive symptoms." AR 1316. While the ALJ's citation is based upon the record, her conclusion does not conform to the Ninth Circuit's standards regarding mentally ill claimants who fail to follow treatment. This finding is therefore not sustained.

///

### 3. Work Activity and Activities of Daily Living

The ALJ's credibility findings may cite a claimant's activities of daily living. *Smolen*, 80 F.3d at 1284; *Lingenfelter*, 504 F.3d 1038. Here the ALJ may discuss a claimant's work attempts, *id.*, and reason that a claimant's daily activities contradict an allegation of disability. *Id., see* also *Batson v. Comm. of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004). The Commissioner does not now defend the ALJ's reference to Ms. Brooks' activities of daily living. Def.'s Br. 7.

#### a. Work Activity

The ALJ found Ms. Brooks' allegation of disability not credible because she performed full-time employment (AR 27), and performed job-search and volunteer work activities. AR 27. The record confirms that Ms. Brook reported that she was working to social worker Austin Simon on September 6, 2007. AR 589. On June 18, 2008, Ms. Brooks informed the Luke-Dorf treatment center that she was working full time, had received health insurance, and no longer wished to rely upon charity health services. Tr. 1316.

Ms. Brooks now argues that the ALJ "ignored evidentiary context," and asserts that the medical record contradicts the ALJ's citations. Pl.'s Opening Br. 23. Here Ms. Brooks argues that treating psychiatrist Philip Bolton, M.D., stated that she should undertake "low stress" work, and cites social worker Beth Lucci's observation of "ongoing mental confusion." *Id.*

The record shows that, in response to questionnaire concerning Ms. Brooks' functional limitations, Dr. Bolton in fact wrote, "Currently successfully employed. At this point I cannot support her disability claim." AR 604.[2] Dr. Bolton's opinion therefore does not contradict the ALJ's

---

[2]The note is undated, but a handwritten annotation states that it was received by an unidentified party on February 15, 2008. AR 604.

PAGE 6 - OPINION AND ORDER

findings regarding Ms. Brooks' work history and her credibility. Further, Ms. Brooks' indicated citation shows that Ms. Brooks reported that she is "concerned about relapse if she gets into a stressful job" to social worker Beth Lucci (Tr. 489), and Ms. Brooks reported that "she does not feel she can work at this time. Dr. [Bolton] has recommended she not work until symptoms are better managed and then work would need to be very low stress or through a special program." Tr. 493. These citations point to Ms. Brooks' own reports, and do not indicate Dr. Bolton himself made such assessments.

Regarding Ms. Lucci's opinion, Ms. Brooks' indicated citation shows Ms. Brooks mistakenly noted a wrong appointment time, and that she therefore continued to experience "mental confusion. Confusion and mistakes effect her self esteem and impacts her mood." AR 489-90. This citation does not establish that the ALJ erroneously discussed Ms. Brooks' work activity in his credibility analysis.

Ms. Brooks also asserts that the ALJ erroneously cited her work attempts, arguing that such activity may be consistent with an allegation of disability. Pl.'s Opening Br. 24. Ms. Brooks' indicated citations establish that the ALJ may not rely upon sporadic activity "punctuated with rest" in finding a claimant not credible, *Reddick v. Chater*, 157 F.3d 715, 722-24 (9th Cir. 1998), or "limited" daily activity. *Benecke v. Barnhart*, 379 F.3d 587, 593-94 (9th Cir. 2004). Ms. Brooks does not now explain the manner in which the activities cited by the ALJ are circumscribed by this legal standard.

However, Ms. Brooks' assertion that her "Meth is Death" business is a manifestation of her mental illness is persuasive. Pl.'s Opening Br. 24. The hearing transcript shows that Ms. Brooks described this activity as "a delusional business that I set up when I was manic and all I did was get

incorporated and I hired people to cook for and clean for me and watch my money, and I hired them to buy me things . . . ." AR 98. She stated that this occurred in 2007. The record additionally shows that Ms. Brooks' counselor noted her report that she "hired staff" in the summer of 2007 to manage her household affairs so that she did not have to go to the hospital." AR 1397.

Ms. Brooks additionally submits that the earnings from this business were paid to herself out of an inheritance. Pl.'s Opening Br. 24. This court cannot determine the veracity of this submission from the record, but concludes that the activity Ms. Brooks described in her testimony is consistent, rather than inconsistent, with an allegation of mental disability.

In summary, the ALJ appropriately cited Ms. Brooks' work activity as it is reflected in medical records produced by Dr. Brooks and the Luke-Dorf treatment center. This citation is sustained. However, this court may only sustain "inferences reasonably drawn" from the record. *Batson*, 359 F.3d at 1193. The ALJ's finding that Ms. Brooks' "Meth is Death" business constitutes activity inconsistent with an allegation of disability due to mental illness is not a reasonable inference. This finding is not sustained.

### b. Other Activities of Daily Living

Finally, the ALJ's credibility conclusion cited Ms. Brooks' activities of daily living, including (1) shopping, (2) going to the gym, (3) attending her child's school events, and (4) paying her bills. AR 29. The Commissioner does not address these activities. This court's review of the 1,446 page record shows that Ms. Brooks reported that she shops for groceries (AR 52, 377), and attends her son's marching band events. AR 53. Ms. Brooks' remaining descriptions of her daily activities state indicate that she does nothing other than watch television each day, does not get dressed, and participates in no hobbies or other activities. AR 374-79. Ms. Brooks specifically

wrote that she must have someone else pay her bills "because I am disorganized. I don't have a savings account. I use the debit card because I bounce checks otherwise." AR 377.

This court must defer to the ALJ's interpretation of a claimant's activities of daily living, so long as that interpretation is based upon substantial evidence. *Rollins v. Massinari*, 262 F.3d 853, 857 (9th Cir. 2001). Substantial evidence is "more than a scintilla and less than a preponderance. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Bray*, 554 F.3d at 1222 (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). Here, the record supports two of the ALJ's four citations to Ms. Brooks' activities of daily living regarding her son's marching band events and grocery shopping. The record directly contradicts the ALJ's finding regarding Ms. Brooks' ability to pay bills, and this court's review of Ms. Brooks' activities of daily living forms and hearing testimony finds no reference to Ms. Brooks' use of a gym. The court is therefore left to conclude that the ALJ's conclusory findings regarding Ms. Brooks' daily activities are not properly based upon the record.

      C.    **Credibility Conclusion**

This court may affirm an ALJ's overall credibility determination while declining to affirm one aspect of it. *Batson*, 359 F.3d at 1197. However, the ALJ's decision contains numerous errors. The ALJ's reliance upon Ms. Brooks' work history, so far as it is supported by Dr. Bolton, is not enough to sustain the ALJ's credibility conclusion in light of the errors discussed above. The ALJ's credibility conclusion is not sustained.

**II.**    **Medical Source Statements**

Ms. Brooks asserts that the ALJ failed to properly evaluated treatment notes submitted to the record by Yoonhui Chloe, PMHNP, and therapist Dana Fox, Licensed Professional Counselor

("LPC"). Pl.'s Opening Br. 16-19.

### A. Standards

The Commissioner's regulations instruct that nurse practitioners and therapists are evaluated as "other" medical sources. 20 C.F.R. §§ 404.1513(d)(1); 416.913(d)(1). Their opinions are relevant to the extent they describe Ms. Brooks' symptoms and functionality. *Id.* The Commissioner additionally issued an Administrative Ruling addressing evaluations of such "other" sources, and specifically instructs that an ALJ consider factors such as (1) how long the source has known the claimant and how frequently she sees the claimant; (2) the consistency of the "other" source opinion with other evidence; (3) the degree to which the source presents relevant evidence to support her opinion; (4) how well the source explains her opinion; (5) whether the source has a specialty or area of expertise related to the individual's impairment; and (6) any other factors that tend to support the source's opinion. SSR 06-3p at *4 (available at 2006 WL 2329939). Opinions of "other" sources may therefore reflect the source's judgment about issues addressed in the claimant's medical record from "acceptable" medical sources, including, "symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions." *Id.* at *5.

The Commissioner ignores these authorities and asserts that the ALJ must only provide "germane" reasons for rejecting the opinions of Ms. Fox and Nurse Chloe under the standards pertaining to lay witnesses. Def.'s Br. 6. The Commissioner's indicated citation refers to testimony submitted by a claimant's spouse, and is silent regarding "other" medical sources. *Valentine v. Astrue*, 574 F.3d 685, 694 (9th Cir. 2009). The record clearly shows that Ms. Fox and Nurse Chloe engaged with Ms. Brooks in a clinical and professional context. Though they are not accorded the weight ascribed to an "acceptable" medical source, such as a physician, their opinions are evaluated

PAGE 10 - OPINION AND ORDER

in a clinical context with reference to treatment notes and other supporting evidence under the standards pertaining to "other" medical sources described above.

**B.     Analysis**

Nurse Chloe and Ms. Fox treated Ms. Brooks concurrently at Western Psychological & Counseling Services between March 2008, and July 2009.  AR 1399, 1433.

Without noting the duration of this treatment, the ALJ cited their records, and stated, "the claimant reported past hospitalizations, but stated that she had no history of any mental health treatment other than when hospitalized.  Thus, these treating sources had little record of the claimant's history of treatment and essentially relied upon the reports of the claimant." AR 27.  The ALJ made no other findings pertaining to the treatment notes submitted by Nurse Chloe and Ms. Fox, other than to note, "During this period the claimant's new husband apparently announced that he wanted a separation; the claimant at times reported a good relationship with her daughter, but also problems related to alleged physical and verbal abuse."  *Id.*

The record shows that Nurse Chloe treated Ms. Brooks on a near-weekly basis between December 19, 2008, and July 6, 2009.  Her notes are handwritten and admittedly difficult to read, but the record shows that Nurse Chloe noted Ms. Brooks' mood fluctuations, administered psychotropic medications, and ordered laboratory tests pertaining to Ms. Brooks' medication regime. AR 1352, 1355-60, 1433-40, 1444-46.

Ms. Fox concurrently met with Ms. Brooks for weekly counseling sessions between March 2008 and June 2009.  AR 1350-51, 1353-54, 1358, 1361-1432.  Ms. Fox produced detailed notes describing Ms. Brooks' response to medications, including a notation that Ms. Brooks is "at risk of harm to others due to driving a vehicle under the influence of prescribed medications."  AR 1351.

PAGE 11 - OPINION AND ORDER

She also consistently noted that Ms. Brooks is lethargic due to medications. *Id.*, AR 1365, 1368. Ms. Fox wrote that a friend helps Ms. Brooks with bill paying (AR 1353), but also noted that Ms. Brooks obtained an unspecified sales job. AR 1383, 1386. On another occasion she noted that Ms. Brooks was "tanned, dressed in a tennis outfit, hair well groomed." AR 1420. These chart notes thus reflect varied functioning throughout the period that Ms. Fox counseled Ms. Brooks.

The ALJ's synopsis quoted above neither accurately nor comprehensively describes the treatment notes submitted by Nurse Chloe and Ms. Fox. The ALJ may omit discussion of evidence neither significant nor probative. *Howard v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003). The treatment notes submitted by both Nurse Chloe and Ms. Fox pertain to a fifteen-month period and show significant fluctuations in Ms. Brooks' symptom severity and associated limitations in functioning. The ALJ had a duty to discuss such evidence. 20 C.F.R. §§ 404.1513(d)(1); 416.913(d)(1); SSR 06-3p at *4-5. His failure to do so is erroneous.

The ALJ subsequently discussed the February 2009 opinion forms Nurse Chloe and Ms. Fox returned to Ms. Brooks' counsel. AR 28. The ALJ first recited Ms. Fox's February 16, 2009, questionnaire responses regarding Ms. Brooks' "moderate" limitations regarding "hazards, goals, interaction with the public, asking questions, and socially appropriate behavior," as well "marked" limitations regarding "understanding, memory, sustained concentration, persistence, and pace," and in instructing criticism, getting along with coworkers, and "dealing with changes." *Id.* The ALJ concluded that Ms. Fox is not an "acceptable" medical source under the Commissioner's regulations, and that "her answers are vague and generally relate to situational stressors." *Id.* This analysis does not properly account for Ms. Fox's opinion in its entirety, discussed above, and is therefore not sustained.

PAGE 12 - OPINION AND ORDER

The ALJ then purportedly gave more weight to the opinion of Nurse Choloe than Ms. Fox. *Id.* Here the ALJ reasoned that Nurse Chloe was a "better qualified source," and then stated that "treatment records reveal that the claimant has been active, socializes and has engaged in work activity," despite periods of exacerbation. *Id.* The ALJ concluded that Ms. Brooks "has not been fully candid with treating sources and that is referred to in these records also." *Id.* The ALJ may reject a medical source opinion predicated upon reports of a claimant properly found not credible. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). Because the ALJ's credibility finding cannot be sustained, this court cannot now sustain an ALJ's concurrent rejection of a medical source based upon Ms. Brooks' credibility. The ALJ's findings pertaining to Nurse Chloe's February 13, 2009, form are also not sustained.

### C. Conclusion: Medical Source Statements

In summary, the ALJ failed to properly evaluate the opinions of Nurse Chloe and Ms. Fox. The ALJ's findings regarding these opinions are not sustained.

## III. Remand

The ALJ erroneously evaluated Ms. Brooks' testimony and the opinions of Nurse Chloe and Ms. Fox. The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (cert. denied, 531 US 1038 (2000)). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Strauss v. Comm'r*, 635 F.3d 1135, 1138-39 (9th Cir. 2011) (quoting *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir 2004)). The court may not

award benefits punitively, and must conduct a credit-as-true analysis to determine if a claimant is disabled under the Act. *Id* at 1138.

Under the "crediting as true" doctrine, evidence should be credited and an immediate award of benefits directed where "(1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." *Id.* The "crediting as true" doctrine is not a mandatory rule in the Ninth Circuit, but leaves the court flexibility in determining whether to enter an award of benefits upon reversing the Commissioner's decision. *Connett*, 340 F.3d at 876 (citing *Bunnell*, 947 F2d at 348). The reviewing court declines to credit testimony when "outstanding issues" remain. *Luna v. Astrue*, 623 F.3d 1032, 1035 (9th Cir. 2010).

The ALJ analysis of Ms. Brooks' testimony, and the opinions of Nurse Chloe and Ms. Brooks is erroneous for the reasons established above. The ALJ's subsequent RFC assessment and hypothetical questions to the vocational expert at step five in the sequential disability analysis are therefore not based upon the proper legal standards.

However, it is not clear from the record that crediting the omitted evidence establishes that Ms. Brooks is disabled at step five in the sequential proceedings. The record suggests that Ms. Brooks continued to perform some work activity throughout the period under review. Ms. Brooks' briefs before this court neither argue nor establish that the opinions of Nurse Chloe and Ms. Fox should be accorded greater weight than that of treating physician Dr. Bolton, social worker Austin Simon, and other treating sources. Further, Ms. Brooks makes no argument specifically pertaining to the improperly omitted evidence discussed above and any subsequent finding that she cannot

PAGE 14 - OPINION AND ORDER

perform work in the national economy. Pl.'s Opening Br. 25; Pl.'s Reply Br. 10. Finally, Ms. Brooks' assertion of disability at step five in the sequential proceeding points to no specific work-related restrictions articulated by herself, Nurse Chloe, or Ms. Fox. *Id.*

Thus, outstanding issues must be resolved before a determination that award of benefits is inappropriate. In such instances, the court declines to credit the improperly omitted testimony. *Luna*, 623 F.3d at 1035. The matter must be remanded for further proceedings to address Ms. Brooks' testimony, the opinions of Nurse Chloe and Ms. Fox, and any work further work activity performed by Ms. Brooks. If necessary, the ALJ must then revise her RFC determination. Finally, the ALJ must make adequate step four and five findings incorporating any revised findings.

## **CONCLUSION**

For these reasons, this court REVERSES the Commissioner's final decision and REMANDS this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion and order.

IT IS SO ORDERED.

Dated this 30 day of September, 2011.

          /s/ Michael W. Mosman
          Michael W. Mosman
          United States District Judge